STATE *vs.* ALTON S. BUTLER.

JANUARY 13, 1950.

PRESENT: Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J. This is an indictment for assault with intent to commit rape. In the course of the trial in the

superior court the defendant took exceptions to certain rulings of the court, and after the jury returned a verdict of guilty he filed a motion for a new trial which was denied by the trial justice. Thereafter defendant prosecuted his bill of exceptions to this court. He has waived all exceptions to evidentiary rulings and has briefed and argued only the exception to the denial of his motion for a new trial.

The complainant, a young girl under the age of consent, whom the defendant is charged with assaulting, testified that on the night of July 31, 1948 she was seated with a male companion near the shore of Mashapaug Pond in Providence; that they arrived there about 10:30 p.m.; that about ten minutes later the defendant suddenly appeared; and that, after addressing an obscene inquiry concerning her to her companion, he pushed her onto the grass and attempted to assault her carnally. She further testified that when her companion tried to aid her the defendant first slapped him in the face and then knocked him to the ground with his fist; that she screamed, whereupon her friend offered the defendant $10 if he would desist; that when this offer was ignored he took out a billfold, which contained his automobile license and $10, and threw it on the grass toward the defendant, who then stated: "No, no, that is too far, I can't find it." Her companion then threw it a little closer and when the defendant went to pick it up she and her friend ran away and returned to her home.

She further testified that they sat on the stairs outside the house discussing whether to tell her family about the incident, but she finally decided not to say anything to them because the defendant had threatened to kill her if she told anyone. However, when she met her aunt in the house she began to cry and upon being asked what was the matter she told her the whole story and shortly thereafter reported it to her grandmother. The police were then called and she related all the facts to them. Although she did not know him she gave the police a detailed description

of her assailant. She told them that he was dressed in a pair of faded blue pants, a T-shirt and a brown jacket; that he was tall, his hair rather thin in front and bushy in back, and that he wore "side taps" and a moustache. At the police station and at the trial she positively identified the defendant as her assailant.

Her companion testified that although he did not know the defendant by name at the time of the assault, he had previously seen him when he was playing ball in the neighborhood; that he gave the police a description of defendant and later that night identified him at the police station. He also positively testified that it was the defendant who had assaulted his companion and struck him twice, first with his hand and then with his fist, when he attempted to assist her.

The defense was an alibi. Defendant testified that on the evening in question he and his wife had visited friends in Warwick in this state, leaving Providence at 8:30 p.m. and returning at approximately 11 p.m. He then left his home on Waldo street to walk to his mother's home on Faith street, arriving there between 11 and 11:15 p.m. On cross-examination defendant admitted that he walked through Cranston street to reach his mother's house and that Cranston street was about a quarter of a mile from Mashapaug Pond. The defendant's wife, his father, and several friends corroborated his claim that he visited friends in Warwick that evening and as to the time of his return; but defendant's own testimony and that of several of his witnesses showed that he was in the vicinity of Mashapaug Pond on that same evening, although he claimed that it was at a time later than that of the alleged assault.

In denying the motion for a new trial the trial justice stated that in his independent judgment there was ample evidence to justify the jury's verdict. He had previously instructed the jury that, in order to find the defendant guilty, his guilt must be established by the state beyond a reasonable doubt. Under our well-settled rule we do not

disturb the decision of a trial justice on a motion for a new trial, unless we find that such decision is clearly wrong or that he has overlooked or misconceived material evidence. *State* v. *Blood,* 70 R. I. 85. We have carefully considered the decision of the trial justice and all the evidence in the case, and we are of the opinion that in reaching his final conclusion the trial justice did not overlook or misconceive any material evidence.

Nor can we say that his decision is clearly wrong. There was evidence tending to support the charge against the defendant. Two witnesses positively identified him as the assailant. The evidence was conflicting and therefore it was the duty of the jury to pass upon the veracity of the witnesses and the credibility of their testimony. In the absence of any showing to the contrary it is to be presumed that they faithfully performed their duty in that respect. They had the benefit, which we do not have, of seeing the witnesses and hearing them testify. Not only has the jury found the defendant guilty but the trial justice has added the weight of his approval to such verdict. A verdict so approved will not be disturbed save for the best of reasons. *State* v. *Badnelley,* 32 R. I. 378. No such reason appears here.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for further proceedings.

*William E. Powers,* Attorney General, *Francis J. Fazzano,* Assistant Attorney General, for state.

*Joseph G. Le Count,* for defendant.